UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

FREDERI OCHOA TITO,

    Petitioner,

v.                                                                          No. 6:26-CV-008-H

PHILLIP VALDEZ, et al.,

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Frederi Ochoa Tito, a native and citizen of Cuba, is one such alien, having illegally entered the United States over three years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either his release or a bond hearing based on the text of the INA and the Fifth Amendment's Due Process Clause. Dkt. No. 7.

In light of *Buenrostro-Mendez*, Ochoa Tito's due process claim is the only remaining non-foreclosed issue. But neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Ochoa Tito are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 7) is denied.

## 1.    Background

In 2022, Ochoa Tito illegally crossed into the United States at an unknown location. Dkt. No. 7 at 35.  Three years later, U.S. Immigration and Customs Enforcement (ICE) took him into custody and detained him without bond.  *Id.* at 9.  Ochoa Tito was soon placed into removal proceedings with a Notice to Appear.  *Id.* at 35.  The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

Ochoa Tito challenged ICE's custody determination—including its decision that he must be detained without bond—before an immigration judge.  Dkt. No. 7 at 38.  The IJ found that he lacked jurisdiction to consider Ochoa Tito's bond request.  *Id.*  Although the IJ did not say as much, his decision stemmed from the Board of Immigration Appeals' recent opinion in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA

for the duration of their removal proceedings.  29 I. & N. Dec. 216, 220 (BIA 2025).  It is

unclear if he appealed the IJ's decision.[1]

Ochoa Tito's wife filed a petition for a writ of habeas corpus on his behalf.  Dkt. No.

1.  Following the Court's Order and Notice of Deficiency and Deficiency Show Cause

Order, Dkt. Nos. 5–6, Ochoa Tito obtained counsel and filed an amended petition, Dkt. No.

7.  The amended petition states three claims for relief.  First, Ochoa Tito alleges that his

detention without bond violates his due process rights.  Dkt. No. 7 at 9–14.  In his second

and third claims, Ochoa Tito contends that his detention without bond violates the INA.  *Id.*

at 14–27.

Before Ochoa Tito filed his amended petition, the Fifth Circuit issued its decision in

*Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's

mandatory-detention policy under Section 1225.  *See* 166 F.4th at 498.  The Fifth Circuit

turned to the plain language of Section 1225, which provides that "in the case of an alien

who is an applicant for admission, if the examining immigration officer determines that an

---

[1] Ochoa Tito appears to be under the mistaken impression that his detention is mandated by *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005).  *See, e.g.*, Dkt. No. 7 at 6–7.  But that decision was overruled by the Attorney General in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019); *see also* 8 U.S.C. § 1103(a)(1) (providing that "ruling by the Attorney General with respect to all questions of law shall be controlling").  Rather, as described above, *Yajure Hurtado* divests IJs of jurisdiction to conduct bond hearings for aliens like Ochoa Tito.  And the Fifth Circuit affirmed that decision's construction of Section 1225(b)(2)(A) in *Buenrostro-Mendez*, 166 F.4th at 498.

On February 18, 2026, however, the Central District of California purported to vacate *Yajure Hurtado*.  *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026).  But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief.  ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025).  Moreover, in a March 6 order, the Ninth Circuit stayed the Central District's vacatur pending a ruling on the government's emergency motion for a stay pending appeal.  *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 5 at 2 (9th Cir. March 6, 2026).  *Yajure Hurtado* therefore continues to bind immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing.  *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000).  Thus, Ochoa Tito's petition does not present an exhaustion problem.  *Id.*

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien

*shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).

The Fifth Circuit found "no material disjunction" between the phrases "applicant for

admission" and "seeking admission," and thus concluded that all applicants for admission

fall within Section 1225(b)(2)(A)'s grasp.  *Buenrostro-Mendez*, 166 F.4th at 502 (quoting

*Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5

(N.D. Tex. Jan. 9, 2026)).

Currently, Ochoa Tito is detained at the Eden Detention Center.  Dkt. No. 7 at 31.

**2.      Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual

detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to

resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533

U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment

or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ

to issue, the petitioner must be "in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th

Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of

the matter as law and justice require."  28 U.S.C. § 2243.

**3.      Analysis**

As noted above, Ochoa Tito raises three claims in his amended habeas petition—one

based on the Fifth Amendment's Due Process Clause, and two others involving Sections

1225 and 1226 of the INA.  Dkt. No. 7 at 9–27.  As explained below, *Buenrostro-Mendez*

forecloses Ochoa Tito's statutory claims.  Thus, the only claim left for consideration is

Ochoa Tito's due process claim.  The Court has considered whether the Due Process Clause

entitles illegal aliens to individualized bond hearings in numerous prior cases.[2]  Even so, the

Court considers the arguments raised in Ochoa Tito's petition to address whether bond-less

detention of aliens present in the United States violates the Constitution.  The answer is no.

### A.    *Buenrostro-Mendez* forecloses Ochoa Tito's INA claims.

Ochoa Tito is an "applicant for admission" within the meaning of Section

1225(a)(1).  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in

the United States who has not been admitted or who arrives in the United States."  8 U.S.C.

§ 1225(a)(1).  Ochoa Tito is an "alien."  He is "present in the United States."  And he "has

not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and

authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining "admission" and

"admitted").  As an applicant for admission, binding Fifth Circuit precedent requires that he

be detained without bond under Section 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at

498.  Thus, Ochoa Tito's INA claims fail.[3]

### B.    The Due Process Clause does not require the government to give Ochoa Tito a bond hearing.

Next is Ochoa Tito's claim that the government's refusal to provide a bond hearing

violates the Due Process Clause of the Fifth Amendment.  Dkt. No. 7 at 9–14.  Because

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue.  *Supra*, n.2.

*Buenrostro-Mendez* did not directly address this question, the Court turns to Ochoa Tito's arguments. He argues that his "prolonged, indefinite detention under [Section] 1225(b) violates the Fifth Amendment by depriving him of liberty without due process of law." *Id.* at 14. He does not clarify whether his challenge is based on substantive or procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to

accomplish its goal." *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Ochoa Tito has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  No part of the statute "says anything whatsoever about bond hearings." *Id.*  Accordingly, Ochoa Tito is not entitled to a bond hearing as a matter of procedural due process.

### C.    Ochoa Tito's failure to cite controlling law is sanctionable.

Finally, the Court reminds Ochoa Tito's counsel that failing "to cite current law may lead to the imposition of sanctions." *Shaw v. Karnes County*, Civ. A. No. SA-16-CA-203, 2017 WL 6403060, at *1 n.1 (W.D. Tex. Nov. 17, 2017).  The Court understands that the Fifth Circuit's decision in *Buenrostro-Mendez* is approximately five weeks old.  But "[e]thical lawyering requires competent lawyering," and "[t]o lawyer competently, the advocate must apprise himself of the case's . . . relevant legal standards." *Bates Energy Oil & Gas, LLC v.*

*Complete Oil Field Servs., LLC*, No. 5:17-CV-808, 2020 WL 10502651, at *5 (W.D. Tex. Oct. 19, 2020).

The failure to discover *Buenrostro-Mendez*, a relatively recent high-profile circuit decision, is careless at best. But Ochoa Tito's appeal to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)—without mentioning that the Supreme Court reversed that decision, on the very grounds he cites, eight years ago in *Jennings*, 583 U.S. at 296–97—is even more troubling. Accordingly, counsel is reminded that, while he may freely "distinguish this case law," he may not "choose[] to ignore it." *Robb v. Elec. Data Sys. Corp.*, 990 F.2d 1253, 1253 (5th Cir. 1993). "[F]ailing to cite controlling law—especially when one is on notice that controlling precedent exists—is a breach of duty to this [C]ourt—a breach that can be sanctionable." *Id.* The Court may issue an order to show cause against counsel, should future violations of this duty occur.

Moreover, *Jennings* and *Buenrostro-Mendez* render Ochoa Tito's constitutional avoidance argument frivolous. In *Jennings*, the Supreme Court rejected the argument that an implicit six-month limitation should be read into Section 1225, akin to the Supreme Court's interpretation of Section 1231(a)(6) in *Zadvydas*. 583 U.S. at 299–300. Because Section 1225 requires detention during the pendency of removal proceedings, the *Jennings* court reasoned, it cannot "reasonably be read to limit detention to six months." *Id.* at 300–01. And in *Buenrostro-Mendez*, the Fifth Circuit confirmed that *Zadvydas* "has no direct application to aliens who are detained and being given due process during removal proceedings." 166 F.4th at 508. Ochoa Tito's constitutional avoidance argument—one of the central contentions in his habeas petition—is therefore squarely foreclosed by binding precedent.

– 8 –

**4.      Conclusion**

In short, Ochoa Tito, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  And the Due Process Clause does not require a bond hearing in these circumstances.  Thus, the amended petition for a writ of habeas corpus (Dkt. No. 7) is denied.[4]

So ordered on March 19, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[4] Accordingly, the motion for a protective order (Dkt. No. 9) and counsel's motion for admission pro hac vice (Dkt. No. 8) are denied as moot.  If counsel wishes to be admitted pro hac vice in the future, he must use the application form required by the Local Rules, *see* Loc. Civ. R. 83.9(b), which is available at the following address: https://www.txnd.uscourts.gov/pro-hac-vice-appearance.